**FILED**

**JUN 15 2009**

Clerk, U.S. District and
Bankruptcy Courts

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

RHONDA N. BAIRD, Pro Se )
13615 Layhill Road )
Silver Spring, MD 20906 )
(301) 603-1641 )
     **Plaintiff,** )
)
         **v.** )
)
VINCENT SNOWBARGER, )
**Acting Director** )
**Pension Benefit Guaranty Corporation** )
1200 K Street, NW )
Washington D.C. 20005 )
)
     **Defendant.** )
_____)

Case: 1:09-cv-01091
Assigned To : Huvelle, Ellen S.
Assign. Date : 6/15/2009
Description: Employ. Discrim.

*JURY ACTION*

## COMPLAINT AND REQUEST FOR JURY TRIAL

### Preliminary Statement

1.   The Plaintiff, Rhonda Baird ("Ms. Baird" or "Plaintiff") brings this suit pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by

the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16, and as

amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter collectively

referred to as "Title VII") to redress discrimination suffered on the basis of race, color,

sex and retaliation arising from the actions of Defendant, the Pension Benefit Guaranty

Corporation (hereinafter "Defendant", "Agency" or "PBGC") via its chief executive

officer, Vincent Snowbarger, Acting Director.  Plaintiff's claims were administratively

exhausted in PBGC including PBGC Case Nos. 05-12 and 07-06, which have pended

for more than 180 days at the Equal Employment Opportunity Commission. Plaintiff

reserves the right to amend the complaint soon to include, *inter alia*, additional claims

and relevant facts from several other actions pending in various phases of the

administrative process.

## Jurisdiction and Venue

2. This Court has jurisdiction over the claims raised herein pursuant to Title VII Plaintiff

    having exhausted her administrative remedies pursuant to 42 U.S.C. § 2000e-16(c).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. §§412

    and 464(b)(2) because all of the actions or omissions giving rise to plaintiff's claims

    occurred in the District of Columbia within the jurisdiction of the United States Court

    for the District of Columbia. Additionally, the Defendant is located in this judicial

    district.

## Parties

4. Plaintiff is an African-American female resident of Maryland residing at 13615

    Layhill Road, Silver Spring, Maryland, 20906.

5. Defendant, PBGC, is a federal agency and has offices located at 1200 K Street N.W.,

    Washington D.C. 20005. All of the events described in this complaint occurred at

    PBGC's headquarters located at this address.

6. At all times relevant to this case, the Defendant has been an employer and has engaged

    in an industry affecting commerce; has employed hundreds of employees; and

    otherwise has been an employer within the meaning of 42 U.S.C. § 2000(b).

## Relevant Background

7. The Plaintiff has been employed at all relevant times by Defendant as an attorney. She

    engaged in EEO activity prior to the events leading to the claims brought in this

2

action.  Plaintiff has also served as a representative in several EEO complaints brought

by other PBGC employees including the claims in *Dunwell v. PBGC*, EEOC Appeal

No. 0120081804 (June 12, 2008) (EEOC reversal of PBGC's dismissal of claims

brought by its only wheelchair-dependent employee including charges that the Agency

did not have an effective evacuation plan for the employee and Agency personnel

affected her ability to take bathroom breaks).

8.   At all relevant times, the Defendant maintained certain key workplace rules and

guidelines that governed the conduct of all of its employees including the following:

a.   Professional Courtesy Directive, which states that PBGC would not tolerate

discourteous behavior and other forms of incivility which constitute

unprofessional behavior and unacceptable conduct and employees would be held

responsible for their inappropriate behavior.

b.   Policy on Workplace Violence, which prohibits violence, threats, harassment,

intimidation, and other disruptive behavior in the workplace and that pledged that

PBGC would take all reports of violative incidents seriously.

c.   Policy on Workplace Harassment, which expresses PBGC's "strong commitment"

to provide a peaceful work environment and defines harassment as "unwelcome

verbal or physical conduct that creates an intimidating, hostile, or offensive work

environment which interferes with the individual's work performance" and

further describes derogatory remarks and the invasion of an individual's personal

space as unacceptable conduct.

9.   On October 2, 2002, Plaintiff a formal EEO complaint against PBGC to redress

workplace concerns in her department which adversely affected her as an African-

American employee.  On November 13, 2002, just six weeks after filing the complaint,
Plaintiff was verbally assaulted and physically accosted by an irate OGC supervisor
while she was in her office. The supervisor's conduct clearly violated the workplace
rules detailed in paragraph #8. Plaintiff immediately reported the incident to
PBGC management.  Plaintiff initially sought an apology and the opportunity to
discuss and address the incident with the supervisor so that the offending behavior
would not reoccur with her or with any other PBGC employee.   That request was
denied.

10. PBGC's OGC and Human Resources Departments ("HRD"), which is charged with
addressing these complaints, failed to take Plaintiff's report of the event seriously and
did not conduct an independent, objective investigation of the incident.

11. On or about December 9, 2002, Plaintiff filed a grievance with the OGC regarding the
subject incident and PBGC's failure to investigate and take action to correct the
offending behavior.  The grievance included a claim for retaliation based in PBGC's
failure to take corrective in violation of Title VII.  PBGC continued to deny Plaintiff's
claims for relief and on or about February 3, 2003, arbitration of the grievance was
invoked by the union at PBGC on behalf of the Plaintiff.

12. On August 19, 2003, the EEO claims filed in October 2002 were brought to this court
for adjudication, Case No. 03-2513.  PBGC was initially represented by the United
States Attorney Office in the District Court action but subsequently released this
representative and hired the private law firm of Seyfarth Shaw to represent it while the
Plaintiff represented herself in the action.

13. In the Spring and Summer of 2004, Plaintiff proceeded to take depositions for the

action pending in District Court.  PBGC denied her the normally-granted official time, among other things, for the depositions though it allowed official time for several other employees with EEO actions against PBGC which were similar to the Plaintiff's claims.

14. In the Summer of 2004, Plaintiff represented herself in the arbitration of her grievance with the assistance of Dwayne Jeffers.  At the time, Mr. Jeffers was the only PBGC employee serving as a union steward.

15. Because the offending acts described in paragraph nine were not addressed by PBCG management, the Plaintiff logically assumed that they were in fact being condoned, so the Plaintiff continued to feel afraid and unsafe in her workplace. No relief was granted even after multiple complaints to PBGC officials, in fact, these complaints produced no action nor even a response from Agency officials.  This occurred even after Plaintiff clearly communicated the emotional impact these incidents at PBGC were having on her and her ability to function at her normal professional level.  Just six weeks prior to the November 13, 2002 incident, Plaintiff was rated 90% effective in her work performance.  A year later, Plaintiff was judged barely able to meet the basic requirements of her position.

16. The Plaintiff subsequently sought the advice and assistance of PBGC's EEO Office and agency officials when she was subjected to hostile treatment by the Office of the General Counsel ("OGC") employees including the Deputy General Counsel for labor and employment law.  The General Counsel was hostile to Plaintiff's filing and prosecution of her EEO claims against PBGC.

17. On or about April 26, 2005, the arbitrator issued a decision in the subject arbitration

matter. The arbitrator found PBGC liable for multiple violations of Plaintiff's rights including violations of various provisions of the Collective Bargaining Agreement, Labor laws, Title VII and PBGC's workplace rules.

18. Specifically, the arbitrator found that the conduct of officials in HRD and OGC, including PBGC's Deputy General Counsel, violated Plaintiff's Title VII rights because these officials intentionally failed to conduct an impartial investigation into Plaintiff's complaint about the conduct of an OGC supervisor because she had engaged in prior EEO-protected activity. The arbitrator also found that the supervisor violated PBGC's Policy on Workplace Violence and its Professional Courtesy Directive when he assaulted and accosted the Plaintiff; he also found that PBGC's General Counsel violated the Professional Courtesy Directive in his reaction to Plaintiff's report of the incident.

19. The arbitrator retained jurisdiction to determine damages due to the Plaintiff. He first ordered the parties to attempt to resolve the arbitration before holding additional hearings. The parties were unable to reach a settlement of the claims.

20. PBGC then expanded the role of Seyfarth Shaw to include the handling of the arbitration matter. To date, based on information obtained through FOIA requests to PBGC, the Agency has paid Seyfarth Shaw almost $1million for its assistance in actions filed by Plaintiff. In addition to two attorneys retained from Seyfarth Shaw, PBGC assigned two in-house attorneys, particularly Raymond Forster, to represent the agency against actions taken by the Plaintiff. Mr. Forster had previously worked on complaints filed by the Plaintiff dating from her 2002 EEO claims against PBGC.

21. On July 15, 2008, the arbitrator issued a decision ordering PBGC to post a notice of its

violation of Plaintiff's rights throughout the agency and granting Plaintiff a six-figure compensatory award for the serious harm she suffered. PBGC has appealed the arbitrator's decisions.

### Factual Allegations

22. In the Spring of 2005, several PBGC contract employees were fired and others disciplined for sending inappropriate emails over PBGC's official computer system. PBGC's actions overwhelming disproportionately affected African-American employees. This situation inflated tension in the workplace and caused serious rifts among employees affected by PBGC's sudden and dramatic actions.

23. Plaintiff was aware that PBGC's actions were initiated by an incendiary email sent to high-level PBGC officials from Robert Perry, an employee with EEO claims who PBGC placed under investigation for inappropriate sexual conduct in the workplace. Plaintiff advised Mr. Perry not to send this email, but the previously-mentioned union representative Dwayne Jeffers advised him to send the subject email. When this action lead to problems for other PBGC employees, Plaintiff disclosed the facts surrounding the agency's actions to assist some of the affected employees.

24. During this period, flyers were disseminated in the workplace about the situation described above. The flyers named the two employees involved, Robert Perry, and to a lesser extent, Dwayne Jeffers, for causing the actions of PBGC that lead to the firing of contract employees and the disciplining of several federal employees.

25. Dwayne Jeffers then became hostile towards the Plaintiff because of her disclosure of the facts behind PBGC's actions. Mr. Jeffers began disseminating emails about the Plaintiff that were, among other things, highly personal, inflammatory, defamatory,

7

libelous, and intimidating alleging that Plaintiff was "psychotic" and somehow associated with pornographers.  The emails were distributed on PBGC's email system. Included in the offending emails distribution was a management official in PBGC's HRD, one of the departments previously found liable for violating Plaintiff's Title VII rights.

26. Beginning on April 8, 2005, Plaintiff filed several complaints with PBGC's HRD regarding Mr. Jeffers' damaging and violative emails, but received no response. Consequently, Plaintiff filed another EEO action challenging PBGC's failure to again respond to her complaints.

27. On June 16, 2005, PBGC sent a memo to all of its employees regarding the "[i]nappropriate use of PBGC Resources."  The HRD official who committed intentional retaliation against Plaintiff, as noted in April 26, 2005 arbitrator decision, sent his subordinate to obtain Plaintiff's signature acknowledging that she received the subject email.  This personal request was made only to Plaintiff and two other employees who also had EEO claims against PBGC.  More importantly, it was made without an investigation to determine whether or not Plaintiff had committed any violation of PBGC's workplace rules, specifically having any involvement with the flyers that PBGC deemed inappropriate. The Plaintiff refused to sign the acknowledgement feeling it was improper and discriminatory.

28. The Plaintiff's supervisor was subsequently contacted and a meeting arranged for the purpose of obtaining Plaintiff's signature on the acknowledgment.  The HRD official made serious allegations in front of the Plaintiff's supervisor about Plaintiff's actions including that she disseminated inappropriate information in the workplace.

29. Plaintiff immediately reported the conduct of these HRD officials to PBGC because of their intentional attempt to disrupt her relationship with her supervisor. PBGC again failed to take action to correct the conduct of HRD officials.

30. On January 11, 2007, the primary OGC attorney representing PBGC in Plaintiff's EEO complaints, Raymond Forster, sent an email to several PBGC employees making reference to the fact that Plaintiff experienced hallucinations. The email was then forwarded to more than 60 OGC employees causing extreme embarrassment and negatively affecting Plaintiff's ability to perform her duties.

31. Plaintiff learned of the email shortly after it was sent when an OGC employee contacted her and provided her with a copy of the email. Plaintiff immediately reported the matter to HRD for an investigation of Mr. Forster's conduct which was in violation of the workplace rules detailed in paragraph eight. PBGC, again, failed to investigate Plaintiff's complaint and refused to take any disciplinary action against Raymond Forster for his publication of defamatory allegations over PBGC's email system.

## Count I
## Retaliation

32. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 31, above.

33. Plaintiff alleges that PBGC willfully, intentionally, maliciously and unlawfully retaliated against her in its continuous and ongoing failure to investigate complaints of highly inappropriate conduct towards her, including statements alleging that she hallucinates, associates with "pornographers" and is psychotic.

34. Defendant PBGC's actions were based on its desire to again retaliate against Plaintiff for her prior EEO activity as well as the positive outcome in the arbitration of her grievance, which found PBGC liable for intentional retaliation in violation of Title VII.

35. As a direct result of PBGC's intentional actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

**Count II**
**Retaliation**
**(Hostile Work Environment)**

36. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 35, above.

37. Plaintiff alleges that PBGC willfully, intentionally, maliciously and unlawfully retaliated against her by allowing the perpetuation and maintenance of a hostile environment where employees felt free to disseminate inflammatory, defamatory, libelous, and intimidating emails with her as the subject.

38. The harassment was so severe and/or pervasive that it altered Plaintiff's conditions of employment and created an abusive atmosphere causing Plaintiff objective and subjective concern about her future employment including her ability to remain in the PBGC workplace.

39. Defendant PBGC's actions were based on its desire to again retaliate against Plaintiff for her prior EEO activity as well as the positive outcome in the arbitration of her

grievance, which found PBGC liable for intentional retaliation in violation of Title VII.

40. As a direct result of PBGC's actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

**Count III**
**Race Discrimination**

41. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 40, above.

42. Plaintiff alleges that PBGC willfully, intentionally, maliciously and/or unlawfully failed and refused to grant Plaintiff the conditions of employment she was entitled to through the application of, *inter alia*, PBGC's workplace rules.

43. Similarly situated Caucasian employees are provided the benefits of the conditions of employment provided for by PBGC's workplace rules.

44. As a direct result of PBGC's intentional actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

**Count IV**
**Race Discrimination**
**(Hostile Work Environment)**

45. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 44, above.

46. Plaintiff alleges that PBGC willfully, intentionally, maliciously and/or unlawfully allowed the perpetuation and maintenance of a hostile environment where employees felt free to disseminate inflammatory, defamatory, libelous, and intimidating emails and to make unfounded allegations about Plaintiff to others.

47. PBGC has promptly responded to complaints by Caucasian employees including a similarly situated employee in OGC whose complaint was entrusted to a Deputy General Counsel for an investigation that was completed in less than one month.

48. The harassment Plaintiff endured was so severe and/or pervasive that it altered her conditions of employment and created an abusive atmosphere causing Plaintiff objective and subjective concern about her future employment including her ability to remain in the PBGC workplace.

49. As a direct result of PBGC's intentional actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

## Count V
## Sex Discrimination

50. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 48, above.

51. Plaintiff alleges that PBGC willfully, intentionally, maliciously and/or unlawfully

failed and refused to grant Plaintiff the conditions of employment she was entitled to through the application of, *inter alia,* PBGC's workplace rules.

52. Similarly situated male employees are provided the benefits of the conditions of employment provided for by PBGC's workplace rules.

53. As a direct result of PBGC's intentional actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

### Count VI
### Sex Discrimination
### (Hostile Work Environment)

54. Plaintiff adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 52, above.

55. Plaintiff alleges that PBGC willfully, intentionally, maliciously and/or unlawfully allowed the perpetuation and maintenance of a hostile environment where employees felt free to disseminate inflammatory, defamatory, libelous, and intimidating emails and to make unfounded allegations about Plaintiff to others.

56. PBGC has promptly responded to complaints by male employees including similarly situated employees including another attorney in OGC whose complaints were investigated though the incident complained of occurred in a union meeting.

57. The harassment Plaintiff endured was so severe and/or pervasive that it altered her conditions of employment and created an abusive atmosphere causing Plaintiff objective and subjective concern about her future employment including her ability to

13

remain in the PBGC workplace.

58.  As a direct result of PBGC's intentional actions, Plaintiff has suffered physical, emotional, mental and economic damages, including but not limited to emotional pain and suffering; anxiety; depression; stress; loss of focus; aggravation; difficulty sleeping and functioning; humiliation and fear; and loss of past, present and future income and benefits.

### Relief Requested

WHEREFORE, Plaintiff Rhonda Baird prays this Court grant the following relief:

(a)    A declaratory judgment that Defendant's actions were taken against her in retaliation for her prior EEO activity, and also because of her race and sex;

(b)    An injunction enjoining Defendant PBGC from engaging in such conduct in the future;

(c)    A judgment awarding Plaintiff all out-of-pocket expenses and costs proximately resulting from Defendant's conduct in an amount appropriate to the proof adduced at trial;

(d)    A judgment awarding Plaintiff compensatory damages from the Defendant in an amount appropriate to the proof adduced at trial;

(e)    A judgment awarding Plaintiff front pay damages from Defendant in an amount appropriate to the proof adduced at trial;

(f)    A judgment ordering Defendant to post a notice of its discriminatory and retaliatory conduct and an apology for its conduct;

(g)    A judgment awarding Plaintiff her costs and reasonable attorney's fees; and

(h)    Grant such other and further relief as the Court deems just and proper.

## **Jury Demand**

Trial by jury is demanded on all issues for which a jury trial is available.

Respectfully submitted,

Rhonda Baird, Pro Se
Plaintiff
13615 Layhill Road
Silver Spring, MD 20906
(301) 603-1641
rnbaird64@aol.com