## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RHONDA N. BAIRD,<br><br>   Plaintiff,<br><br>   v.<br><br>VINCENT SNOWBARGER,<br>Acting Director,<br>Pension Benefit Guaranty Corporation<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

         Civil Action No. 09-1091 (ESH)

## <u>MEMORANDUM OPINION</u>

   Plaintiff Rhonda N. Baird has sued her employer, claiming discrimination on the basis of her race and sex, retaliation for engaging in protected activity, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Before the Court is defendant's motion to dismiss, or in the alternative, for summary judgment. For the reasons set forth below, defendant's motion will be granted.

## BACKGROUND

## I.  FACTUAL HISTORY

### A.  Background

   Plaintiff is an African-American female and is currently employed as an ERISA/bankruptcy attorney in the Office of the Chief Counsel, Pension Benefit Guaranty Corporation ("PBGC"). (First Amended Complaint ["Compl."] ¶¶ 4, 7.) Although appearing *pro se*, plaintiff is an experienced litigant, having represented herself in numerous EEO complaints and civil actions, *see, e.g.*, *Anderson v. International Federation of Professional & Technical Engineers*, No. 10-0895 (D.D.C. filed May 28, 2010); *Baird v. Holway*, No. 10-0572

(D.D.C. filed April 9, 2010); *Baird v. Holway*, 539 F. Supp. 2d 79 (D.D.C. 2008); *Baird v. Chao*, No. 03-1759 (D.D.C. filed August 19, 2003), and having served as a representative for PBGC employees with respect to their EEO complaints. (*See* Compl. ¶ 7.) Plaintiff was also an active member of the union at PBGC, NAGE Local R3-77, and she served as union president from April 2007 until its dissolution in early 2009. (*Id.* ¶¶ 38, 51.)

On October 2, 2002, plaintiff filed a formal EEO complaint against PBGC to redress workplace concerns in her department. (*Id.* ¶ 9.) Thereafter, on November 13, 2002, plaintiff claims that she was accosted by a supervisor in her department. (*Id.*) She filed a grievance with her department, the Office of General Counsel ("OGC"), regarding the incident, accusing PBGC of failing to investigate and to take action to correct the behavior. (*Id.* ¶ 11.) The dispute went to arbitration under the collective bargaining agreement, and the arbitrator ruled in her favor in 2005. (*Id.* ¶¶ 11, 18-20.) PBGC appealed the arbitrator's decision in 2008 (*id.* ¶ 22), which was upheld by the Federal Labor Relations Authority on April 28, 2010. (Dkt. #20.) While the subject of this arbitration is not before the Court, plaintiff claims this incident constitutes relevant evidence, as well as protected activity for purposes of plaintiff's retaliation claims.

### B. 2005 EEO Complaint (Agency No. 05-12)

In spring 2005, two of plaintiff's co-workers at PBGC, Robert Perry and Dwayne Jeffers, concluded that plaintiff had disseminated flyers throughout the workplace that accused them of triggering a PBGC scan of its email system, which led to the firing and disciplining of several employees. (*Id.* ¶¶ 25-26.) In response, Mr. Jeffers began sending emails to other PBGC employees calling plaintiff "psychotic." (*Id.* ¶ 26.) On April 8, 2005, plaintiff filed several complaints with PBGC's Human Resources Department ("HRD") regarding these emails. (*Id.* ¶ 27.) On June 16, 2005, PBGC sent an email to all employees regarding "Inappropriate use of PBGC Resources." (*Id.* ¶ 28.) HRD official Richard Lattimer sent a subordinate to obtain

plaintiff's signature acknowledging that she had received this email. (*Id.*) Mr. Lattimer requested this signature only from plaintiff and two other employees. (*Id.*) Plaintiff refused to sign the acknowledgment, believing it to be retaliatory. (*Id.*) The plaintiff's supervisor was contacted, and a meeting was held for the purpose of obtaining plaintiff's acknowledgment of receipt of the email. (*Id.* ¶ 29.) At the meeting, an HRD official alleged that plaintiff had disseminated the flyers mentioned above. (*Id.*) Plaintiff reported this incident to PBGC, but according to her, PBGC failed to respond. (*Id.* ¶ 30.) In August 2005, plaintiff filed formal EEO complaint No. 05-12 challenging PBGC's failure to investigate her complaints. (*Id.* ¶¶ 27, 30.) Thereafter, in November 2005, PBGC hired the law firm of Littler Mendelson to conduct an investigation into, among other things, plaintiff's complaints relating to the dissemination of inappropriate information in the workplace. (*Id.* ¶ 31.) Plaintiff cooperated with this investigation and was informed in February 2006 that Litter Mendelson had found no violation of PBGC workplace rules because the conduct complained of constituted protected union activity. (*Id.* ¶¶ 31, 33.)

### C.     2006 EEO Complaints (Agency Nos. 06-09 and 07-01)

On April 10, 2006, plaintiff filed formal EEO complaint No. 06-09 alleging discrimination on the basis of race, sex and reprisal on the grounds that the agency had failed to promptly respond to her complaints, allowed medical and personal information to be disseminated by her union representative, blocked her email messages to her union representative and a witness in the arbitration, and sought to sanction her. *Baird v. Snowbarger*, EEOC Appeal No. 0120072177, Agency Nos. 06-09 and 07-01 (July 10, 2009). On October 16, 2006, plaintiff filed formal EEO complaint 07-01 alleging that PBGC's EEO office improperly recommended dismissal of her 2005 EEO complaint. *Id.* PBGC consolidated these two

complaints and dismissed them, and the EEOC affirmed the agency's dismissal on July 10, 2009.
*Id.*

### D. 2007 EEO Complaint (Agency No. 07-06)

On January 11, 2007, Raymond Forster, the primary OGC attorney who represented PBGC in plaintiff's union arbitration, sent an email to several PBGC employees advising the "11th floor OGC staff in the area of conference room 11E to use caution about what they say in halls or open offices," for "[c]ertain people who will be in 11E have a way of twisting and publicizing their litigation induced hallucinations." (Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment ["Def.'s Mot."] Ex. 3; Compl. ¶ 36.) Plaintiff reported the email to HRD, but according to plaintiff, defendant did not investigate the matter and did not take disciplinary action against Forster. (*Id.* ¶ 37.) Plaintiff filed formal EEO complaint No. 07-06 in connection with this matter on February 12, 2007. (Def.'s Mot. Ex. 3.) PBGC's EEO office accepted the complaint for investigation on June 15, 2007, and the investigation was completed on April 1, 2008. (*Id.*) Plaintiff requested a hearing before the EEOC on May 9, 2008, but filed this action prior to a final EEOC decision. (*Id.* Exs. 31-32.)

### E. EEO Complaints Nos. 09-02 and 09-06

On October 9, 2008, plaintiff filed yet another EEO complaint, No. 09-02, in which she alleged that she was subjected to race discrimination, reprisal, and a hostile work environment for "winning a liability decision finding unlawful retaliation by labor management staff of PBGC in 2005 & 2008 . . . filing EEO complaints and civil action against PBGC, and representing employees in EEO matters from 2002-2008." (*Id.* Ex. 21.) Plaintiff filed formal EEO complaint No. 09-06 on similar grounds on February 23, 2009. (*Id.* Ex 22.) In these complaints, plaintiff alleged, *inter alia*, that PBGC "attacked her law license" and assigned her non-EEO work so that

she would not have sufficient time to work on EEO matters.  (*Id.* Exs. 21-22.)  Final administrative action in these complaints occurred on April 28, 2009.  (*Id.* Ex. 23.)

### F.  EEO Complaint No. 08-03

Plaintiff filed EEO complaint No. 08-03 on November 29, 2007, alleging discrimination, retaliation, and hostile work environment when, in her capacity as union president, she engaged in several union activities, prompting adverse responses by agency management.  *Baird v. Millard*, EEOC Appeal No. 0120083045, Agency No. 0803 (Nov. 7, 2008).  The agency dismissed the complaint on May 20, 2008, and the EEOC affirmed this dismissal on November 5, 2008.  *Id.*

### G.  EEO Complaint No. FC-001-2010

In August 2009, plaintiff, in her capacity as counsel for fellow employee Richard Anderson, was deposing Ruben Moreno, an HRD labor management official, in Mr. Anderson's EEO action.  (Compl. ¶ 55.)  PBGC attorney Scott Schwartz was also present.  (*Id.*)  During a break in the deposition, Mr. Moreno began angrily yelling at plaintiff and pounding the table. (*Id.*)  Plaintiff reported this incident to PBGC officials, who did not, in her view, take corrective action.  (*Id.*)  As a result, plaintiff filed formal EEO complaint No. FC-001-2010 on October 27, 2009, which was dismissed by PBGC's EEO office on December 29, 2009.  (Def.'s Mot. Exs. 24-25.)

\* \* \*

Plaintiff filed her initial complaint on June 15, 2009, and an amended complaint on February 19, 2010.  Defendant responded by moving to dismiss all counts on the grounds of failure to exhaust or for failure to state a claim, or in the alternative, for summary judgment. Plaintiff has opposed this motion, or in the alternative, has sought discovery under Federal Rule of Civil Procedure 56(f).

**ANALYSIS**

## I.    LEGAL STANDARD: MOTION TO DISMISS

Despite some confusion in this jurisdiction regarding "whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim," recent cases "favor treating failure to exhaust as a failure to state a claim." *Hansen v. Billington*, 644 F. Supp. 2d 97, 102 (D.D.C. 2009) (listing cases); *see also Kilby-Robb v. Spellings*, 309 F. App'x. 422, 423 n.1 (D.C. Cir. 2009) ("[T]he mandatory exhaustion requirement is not jurisdictional.").

As the Supreme Court recently held in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "[t]o survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted)). The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in the plaintiff's favor. *Maljack Prods. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995). "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'" *Hughes v. Abell*, 634 F. Supp. 2d 110, 113 (D.D.C. 2009) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the

6

complaint, and matters about which the Court may take judicial notice." *Hansen*, 644 F. Supp. 2d at 102 (internal quotation omitted).

Although plaintiff is proceeding *pro se*, she is an attorney and an experienced litigant.[1] Therefore, plaintiff "is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court." *Richards v. Duke University*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007), *aff'd*, No. 07-5119, 2007 U.S. App. LEXIS 30275 (D.C. Cir. Aug. 27, 2007).

## II.    EXHAUSTION OF TITLE VII CLAIMS

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (citing *Brown v. General Services Administration*, 425 U.S. 820, 832-33 (1976)).  An employee of the federal government complaining of discrimination must "initiate contact" with an EEO counsel within 45 days of the allegedly discriminatory action or, in the case of a personnel action, within 45 days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1).  If the matter is not resolved informally, the complainant may file a formal complaint against the agency, which the agency must investigate within 180 days of filing.  29 C.F.R. §§ 1614.105(d), 106(e)(2), 108(e).  A complainant must file her formal charge within 180 or 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act" and "[t]he charge, therefore, must be filed

---

[1] *See, e.g.*, *Anderson v. International Federation of Professional & Technical Engineers*, No. 10-0895, (D.D.C. filed May 28, 2010); *Baird v. Holway*, No. 10-0572 (D.D.C. filed  April 9, 2010); *Baird v. Holway*, 539 F. Supp. 2d 79 (D.D.C. 2008); *Baird v. Chao*, No. 03-1759 (D.D.C. filed August 19, 2003); *Baird v. Snowbarger*, EEOC Appeal No. 0120072177, Agency Nos. 06-09 and 07-01 (July 10, 2009); *Baird v. Millard*, EEOC Appeal No. 0120083045, Agency No. 0803 (Nov. 7, 2008); *Baird v. Snowbarger*, EEOC Appeal No. 01200639481, Agency No. 05-12 (March 16, 2007); *Baird v. Belt*, EEOC Appeal No. 01A43609, Agency No. 04-01 (October 22, 2004).

within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Once the agency investigation concludes, the employee has the right to (1) request a hearing and decision from an administrative judge, or (2) request an immediate final decision from the agency. 29 C.F.R. § 1614.108(f). The employee may appeal a decision of the administrative judge or the agency to the EEOC or file a civil action in federal district court within 90 days of the receipt of a notice of final action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401, 1614.407.

In filing a civil action in district court following an EEO complaint, an employee may only file claims that are "like or reasonably related to the allegations of the [EEO] charge and grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). The Title VII exhaustion requirement also means that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

The parties appear to be in agreement that the allegations in complaints FC-006-2010 and FC-010-2010 are not properly before this Court. The specific allegations in these complaints appear nowhere in plaintiff's amended complaint (Def. Mot. at 18), and plaintiff agrees that these complaints are still in the administrative process and therefore have not yet been exhausted. (Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ["Pl.'s Opp."] at 17.) As a result, to the extent plaintiff's First Amended

Complaint could be construed to encompass complaints FC-006-2010 and FC-010-2010, defendant's motion to dismiss these claims is granted.

Defendant has also moved to dismiss plaintiff's claims based on EEO complaints 06-09, 07-01, 08-03, 09-02, 09-06, and FC-001-2010, arguing that plaintiff has failed to timely file a civil action within 90 days after receipt of notice of final agency action, as required by 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a).

It is uncontested that final agency action in EEO complaint FC-001-2010 occurred on December 29, 2009, when PBGC's EEO office dismissed plaintiff's complaint regarding Ruben Moreno's conduct at a deposition that plaintiff was conducting. (Def.'s Mot. at 16; Pl.'s Opp. at 15.) Plaintiff's amended complaint raising this claim was filed on February 19, 2010. (*See* Compl. ¶ 55.) Therefore, the Court declines to dismiss FC-001-2010 for failure to exhaust administrative remedies or to timely file a civil action following final administrative action.

The majority of plaintiff's complaints, however, were not filed within the 90-day time period following final administrative action. Final administrative action in EEO complaint 08-03 was on November 5, 2008. *Baird v. Millard*, EEOC Appeal No. 0120083045, Agency No. 0803 (Nov. 7, 2008). Plaintiff's original complaint was filed on June 15, 2009. Final administrative action in complaints 09-02 and 09-06 occurred on April 28, 2009 (Def. Mot. Ex. 23),[2] and final

_____

[2] The Court takes judicial notice of PBGC's April 28, 2009 letter dismissing plaintiff's complaints. The Court notes that exhibits, such as the EEOC documents attached to defendant's motion, may be considered in deciding the motion to dismiss because "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 376 (3d ed. 2004); *Rogan v. Giant Eagle, Inc.*, 113 F.Supp.2d 777, 782 (W.D. Pa. 2000) ("It is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the

administrative action in complaint 06-09/07-01 (consolidated) occurred on July 10, 2009. *Baird v. Snowbarger*, EEOC Appeal No. 0120072177, Agency Nos. 06-09 and 07-01 (July 10, 2009). Plaintiff's original complaint did not raise the issues in EEO complaints 09-02, 09-06, or 06-09/07-01, and her amended complaint was not filed until February 19, 2010. Plaintiff has therefore failed to bring a timely civil action raising EEO complaints 08-03, 09-02, 09-06, or 06-09/07-01 (consolidated). *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. 1614.407(a).

It is within the Court's discretion to excuse a plaintiff's failure to meet administrative time limits by applying the doctrine of equitable tolling. *Johnson v. Billington*, 404 F. Supp. 2d 157, 162 (D.D.C. 2005). The D.C. Circuit has "set a high hurdle for equitable tolling, allowing a statute to be tolled only in extraordinary and carefully circumscribed instances," *Communications Vending Corp. of Az. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (citation and internal quotation marks omitted), including "'where a motion for appointment of counsel is pending and equity would justify tolling the statutory period[,] . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.'" *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). *See also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (allowing for equitable tolling when a plaintiff is found to be *non compos mentis*). A plaintiff's failure to exercise due diligence in filing is insufficient to warrant the application of equitable tolling. *See Battle v. Rubin*, 121 F. Supp. 2d 4, 8 (D.D.C. 2000) (plaintiff must have exercised due diligence and her excuse for failure to timely file must be "more than a garden variety claim of excusable neglect"). The plaintiff bears

---

plaintiff's claim, or as information which is a matter of public record, without converting this motion to one for summary judgment.").

the burden of proving "facts supporting equitable avoidance of the result." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

In her opposition, plaintiff requests that the Court toll the statute because she has been "beleaguered" by the actions of defendant's employees who have failed to provide her with the "positive and productive work environment she is entitled to." (Pl.'s Opp. at 15.) She further alleges that she suffers from health problems as a result of defendant's conduct. (*Id.* at 16.) Such allegations, even if true, are insufficient for purposes of invoking the doctrine of equitable tolling. There is no allegation or evidence of "affirmative misconduct" by defendant designed to "lull plaintiff into inaction" or otherwise prejudice her ability to timely file. *McAlister*, 2010 U.S. Dist. LEXIS 86442, at *5. Plaintiff's alleged hardships, which at their core simply restate the allegations in her complaint, simply do not constitute the type of "extraordinary and carefully circumscribed instance[s]" that warrant equitable tolling. *Communications Vending Corp.*, 365 F.3d at 1075. Plaintiff may "describe emotional difficult[ties], but of a kind that [were] basically related to the work environment. . . . She does not tell us that she was unable to engage in rational thought and deliberate decision making sufficient to pursue her claim alone or through counsel." *Smith-Haynie*, 155 F.3d at 580 (citation and internal quotation marks omitted). Indeed, during the complained-of period, plaintiff has filed the instant action, amended her complaint, filed numerous EEO complaints and civil actions in this Court,[3] and represented fellow union members in no fewer than six EEO claims against defendant. (*See* Def.'s Reply Ex. 1.) In short, there is *no* evidence to support an inference that plaintiff was "*in fact* prevented . . .

---

[3] *See, e.g.*, *Anderson v.* International Federation of Professional & Technical Engineers, No. 10-0895, (D.D.C. filed May 28, 2010); Baird v. Holway, No. 10-0572 (D.D.C. filed April 9, 2010); Baird v. Holway, 539 F. Supp. 2d 79 (D.D.C. 2008); *Baird v. Snowbarger*, EEOC Appeal No. 0120072177, Agency Nos. 06-09 and 07-01 (July 10, 2009); *Baird v. Millard*, EEOC Appeal No. 0120083045, Agency No. 0803 (Nov. 7, 2008); *Baird v. Snowbarger*, EEOC Appeal No. 01200639481, Agency No. 05-12 (March 16, 2007).

from managing her affairs." *Smith-Haynie*, 155 F.3d at 580 (emphasis in original) (citation and internal quotation marks omitted).

Plaintiff argues in the alternative that the discrete claims made in her untimely EEO complaints constitute a hostile work environment when considered in the aggregate and should be considered for this purpose alone. (Pl.'s Opp. at 16-17.) As explained more fully in Section III(C) *infra*, plaintiff cannot "cobbl[e] together a number of distinct, disparate acts"—indeed, the "'very employment actions [s]he claims are retaliatory'"—and thereby "'bootstrap alleged retaliatory incidents into a broader hostile work environment claim.'" *Franklin v. Potter*, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) (quoting *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005)).

Accordingly, defendant's motion to dismiss is granted as to EEO complaints 08-03, 09-02, 09-06, and 06-09/07-01 (consolidated). The Court will therefore address plaintiff's remaining claims: EEO Complaint No. 05-12 (request to acknowledge receipt of memorandum and failure to adequately investigate April 2005 complaints regarding insulting emails); EEO Complaint No. 07-06 (failure to investigate January 2007 complaint regarding insulting email); and EEO Complaint No. FC-001-2010 (failure to take corrective action when plaintiff was yelled at by Mr. Moreno during his deposition).

## III.    TITLE VII

Plaintiff alleges that she was the target of numerous complaints of harassing emails, insults, and unfounded allegations by her co-workers and litigation opponents over a period of several years. (Pl.'s Reply at 21-23.) While she does not allege that these underlying communications were themselves motivated by her race, sex, or prior protected activity,[4]

---

[4] The investigation conducted by Littler Mendelson concluded that the emails sent by Robert Perry and Dwayne Jeffers, both of whom are African-American, related to protected union activity. Moreover, both Forster and Moreno were plaintiff's adversaries in litigation during the time in question.

plaintiff claims that the defendant discriminated and retaliated against her by failing to conduct timely investigations into these complaints or by failing to investigate her complaints at all. Plaintiff further asserts that PBGC "failed to take appropriate corrective action" and thus "did not properly stop the activities of other individuals in sending improper, defamatory, and threatening emails." (*Id.* at 25.)  Furthermore, plaintiff alleges that PBGC's "intentional failure" to "investigate or take appropriate corrective action" in response to her complaints created a hostile work environment.  (*Id.*)

As an initial matter, the Court must note that plaintiff appears to be proceeding on the fundamental misunderstanding that under Title VII, "[d]efendant is obligated to respond to complaints and take corrective action where warranted to ensure Plaintiff has a '*positive and productive work environment*.'"  (Pl.'s Opp. at 21 (citing PBGC "workplace rules") (emphasis added); *see id.* at 22 ("Defendant has repeatedly failed to apply its workplace rules to protect the Plaintiff in the workplace, violating its own policy . . . .").)  Contrary to plaintiff's belief, Title VII is not "'a general civility code for the American workplace.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).  Therefore, to the extent that plaintiff attempts to utilize Title VII to create a federal cause of action for violations of PBGC's internal rules and policies, her claims fail as a matter of law.

### A.    Disparate Treatment

Defendant argues that plaintiff's remaining disparate treatment claims must be dismissed because the alleged acts do not constitute "adverse employment action[s]" under Title VII. (Def.'s Mot. at 18-21.)  Defendant challenges plaintiff's allegations that the following were adverse actions: (1) the agency's failure to conduct a timely and adequate investigation of her complaints of receiving inappropriate emails from other employees and from opposing counsel

representing the agency in plaintiff's union grievance (Compl. ¶¶ 27, 30, 31, 33, 37); (2) PBGC's "fail[ure] to take corrective action" in response to Ruben Moreno yelling at her while she was taking his deposition in a co-worker's EEO case (*id.* ¶ 55); and (3) PBGC's selective attempt to obtain plaintiff's signature acknowledging receipt of an email titled: "Inappropriate use of PBGC resources." (*Id.* ¶ 28.)

To succeed on a claim of discrimination under Title VII, a plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To show an adverse action, plaintiff must show "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009) (citation and internal quotation marks omitted). "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). In most cases, a tangible employment action "'inflicts *direct* economic harm.'" *Douglas*, 559 F.3d at 552 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). However, where the alleged significant change in employment status is not obvious, "an employee must go the further step of demonstrating how the decision nonetheless caused such an objectively

tangible harm," which requires a court "to consider whether the alleged harm is unduly speculative." *Douglas*, 559 F.3d at 553.

### 1. Failure to Investigate or Discipline Other Employees

Plaintiff claims that PBGC discriminated against her on the basis of her race and sex when it "fail[ed] to investigate complaints of highly inappropriate conduct towards her" (Compl. ¶ 63), and "refused to grant [her] the conditions of employment she was entitled to" through the application of, *inter alia*, PBGC's workplace rules. (*Id.* ¶¶ 73, 81.) Specifically, plaintiff claims that PBGC failed: (1) to adequately investigate her complaints in April 2005 that she was the subject of a number of insulting emails attacking her as "psychotic"; (2) to investigate her complaint in January 2007 that Forster sent an email stating that plaintiff experienced "litigation induced hallucinations"; and (3) to take corrective action when Moreno yelled at her during a deposition. (*Id.* ¶¶ 27, 30, 31, 33, 37, 55.) Assuming the truth of these allegations, as the Court must at this stage, plaintiff's claims do not constitute adverse employment actions, and thus, she cannot establish a *prima facie* case of discrimination. Even if PBGC had failed to investigate plaintiff's claims,[5] this would not effect a "significant change" in *plaintiff's* employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas*, 559 F.3d at 552 (citation and internal quotation marks omitted). Defendant's motion to dismiss these claims will therefore be granted.

### 2. Requesting Signature Acknowledging Receipt of Memorandum

Plaintiff claims she was discriminated against when defendant sought to obtain her signature acknowledging that she had received a memorandum sent to all PBGC employees

---

[5] As the Court notes below, plaintiff admits that PBGC did in fact investigate several of her complaints, but failed to reach outcomes that were to her satisfaction.

regarding the "Inappropriate use of PBGC Resources." (Compl. ¶¶ 28-29.) Plaintiff believed

she had been singled out, and thus she refused to sign the acknowledgement. (*Id.*) While being

asked to acknowledge receipt of a memorandum may have been "unprecedented" (*id.*), and may

have been an annoyance to plaintiff, it does not rise to the level of objectively tangible harm.

*Kinsey v. City of Jacksonville*, No. 3:01-785, 2005 U.S. Dist. LEXIS 31870, at *22-23 (M.D. Fla.

Dec. 6, 2005) (even requiring signature to acknowledge receipt of form not an adverse action

under Title VII); *see also Williams v. Dodaro*, 576 F. Supp. 2d 72, 88-89 (D.D.C. 2008) (letter

reminding plaintiff that she was required to keep supervisor apprised of information did not

constitute adverse employment action where letter "did not indicate that it was a reprimand, . . .

was not placed in [plaintiff's] personnel file, and . . . did not lead to any disciplinary action

levied against [plaintiff]"); *see also Cochise v. Salazar*, 601 F. Supp. 2d 196, 201 (D.D.C. 2009)

(letters of counseling or warning without attendant effects on employment are not "materially

adverse"), *aff'd*, No. 09-5115, 2010 U.S. App. LEXIS 10672 (D.C. Cir. May 24, 2010);

*Hutchinson v. Holder*, 668 F. Supp. 2d 201, 217-18 (D.D.C. 2009) (requirement that plaintiff

communicate sick leave requests directly to supervisor instead of normal procedure of

communicating such requests to a co-worker did not constitute adverse action). As such, a

request that plaintiff merely acknowledge the receipt of the memorandum does not constitute an

adverse employment action, and this claim will be dismissed.

### B. Retaliation

"The antiretaliation provision protects an individual not from all retaliation, but from

retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. To prove a retaliation

claim under Title VII, a plaintiff "generally must establish that he or she suffered (i) a materially

adverse action (ii) because he or she had brought or threatened to bring a discrimination claim."

*Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). For a retaliation claim, the

concept of adverse action is broader than in the discrimination context since it "can encompass harms unrelated to employment or the workplace 'so long as a reasonable employee would have found the challenged action materially adverse.'" *Rattigan v. Holder*, 604 F. Supp. 2d 33, 46 (D.D.C. 2009) (quoting *Baloch*, 550 F.3d at 1198 n.4 (internal citation omitted)).  To be materially adverse, the action must be one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

### 1.    Failure to Investigate or Discipline Other Employees

Even under the more lenient standard set forth for retaliation claims in *Burlington*, the harm complained of by plaintiff is simply too attenuated to be actionable under Title VII.[6]  While an employer's failure to investigate or punish another employee could have an impact on the employee who is the subject of a complaint, the critical inquiry is not whether the *targets* of plaintiff's complaints were punished, but whether *plaintiff* was harmed.  *See Burlington*, 548 U.S. at 67 ("[T]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  Even assuming *arguendo* that plaintiff suffered emotional distress as a result of the disparaging emails and remarks from her co-workers and litigation opponents[7] (Compl. ¶¶ 65, 70), whether plaintiff suffered objective harm as a result

---

[6] While this Court has noted that "[t]he issue of whether a particular employment action was materially adverse is fact-intensive and 'depends upon the circumstances of the particular case,'" *Hutchinson v. Holder*, 668 F. Supp. 2d at 218 (quoting *Howard v. Gutierrez*, 237 F.R.D. 310, 313 (D.D.C. 2006)), this certainly does not preclude the Court from dismissing a claim under Rule 12(b)(6) where, as a matter of law, it "do[es] not rise to the level of an adverse employment action for purposes of a retaliation claim." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 75 (D.D.C. 2007); *see also Brookens v. Solis*, 616 F. Supp. 2d 81, 91-92 (D.D.C. 2009).

[7] As an experienced litigant, plaintiff is no doubt aware that "all litigation, by its very nature, is bound to feature a certain degree of adversarial posturing." *Lewis v. School Bd. of Loudoun County*, 808 F. Supp. 523, 528 (E.D. Va. 1992).

of defendant's alleged failure to investigate these incidents or to impose discipline is speculative at best.  Plaintiff improperly assumes, without foundation, (1) that such investigations would have concluded in her favor, (2) that the investigations would have resulted in disciplinary action, and (3) that the discipline would have halted future incidents by different individuals in completely dissimilar situations.  Such speculation cannot form the basis of a Title VII retaliation claim.  *See Sewell v. Chao*, 532 F. Supp. 2d 126, 137 (D.D.C. 2008) ("mere speculation" insufficient to establish materially adverse consequences), *aff'd sub nom. Sewell v. Hugler*, No. 08-5079, 2009 U.S. App. LEXIS 4136 (D.C. Cir. Feb. 25, 2009).

It is also worth noting that each underlying event plaintiff complained of was a minor, trivial annoyance, and such "sporadic verbal altercations or disagreements do not [themselves] qualify as adverse actions for purposes of [a] retaliation claim[]." *Baloch*, 550 F.3d at 1199. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.  Even assuming that PBGC failed to investigate plaintiff's complaints, it is difficult to see how a "reasonable worker" would be "dissuaded . . . from making or supporting a charge of discrimination," *id.*, simply because her employer failed to investigate each and every time she reported such "petty slights or minor annoyances" to her superiors.  *See Barbour v. Browner*, 181 F.3d 1342, 1346, (D.C. Cir. 1999) (quoting *Dale v. Chi. Trib. Co.*, 797 F.2d 458, 464 (7th Cir. 1986)) ("Title VII . . . does not authorize a Federal court to become a 'super-personnel department that reexamines an entity's business decisions.'").  This case is therefore readily distinguishable from a failure to investigate the extreme conduct at issue in *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) (FBI's refusal to investigate death threats made by federal prisoner against plaintiff and wife), or the conduct in *Hawkins v. Anheuser-*

*Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008) (failure to investigate employee who had set fire to plaintiff's car and threatened to kill her if she reported the harassment).

Furthermore, it is significant that as to some of plaintiff's claims, she alleges not a failure to investigate, but rather only a failure to *timely* investigate or to *discipline* plaintiff's fellow employees. Regarding the August 2009 incident when Mr. Moreno yelled at plaintiff while she was taking his deposition, plaintiff alleges not that PBCG failed to investigate this incident, but that it "failed to take corrective action." (Compl. ¶ 55.) Likewise, plaintiff admits that PBGC did in fact investigate her April 2005 complaints regarding inappropriate emails. PBGC sent a memo to all employees regarding inappropriate use of PBGC resources in June 2005. Plaintiff received this email. (*Id.* ¶¶ 28-29.) In connection with the investigation, PBGC hired an outside law firm in November 2005. (*Id.* ¶ 31.) Plaintiff cooperated with this investigation and provided information to the investigators. (*Id.*) The investigation concluded in February 2006 with a determination that no violation of PBGC workplace rules had occurred because the complained-of conduct was protected union activity.[8] (*Id.* ¶ 33.) Plaintiff received a letter informing her of the outcome of this investigation. (*Id.*) At its essence, plaintiff's allegation is not that PBGC failed to conduct an investigation, but rather that she disagrees with the outcome of this investigation. This is not sufficient for plaintiff to make out a *prima facie* case of retaliation, and therefore, her retaliation claims will be dismissed.

### 2. Requesting Signature Acknowledging Receipt of Memorandum

---

[8] The extent of internecine union warfare at PBGC is well documented in various cases in this Court. *See, e.g.*, *Anderson v. International Federation of Professional & Technical Engineers*, No. 10-0895 (D.D.C. filed May 28, 2010); *Baird v. Holway*, No. 10-0572 (D.D.C. filed April 9, 2010); *Baird v. Holway*, 539 F. Supp. 2d 79 (D.D.C. 2008); *Johnson v. Holway*, 439 F. Supp. 2d. 180 (D.D.C. 2006).

Plaintiff also claims she was retaliated against when defendant sought to obtain her signature acknowledging that she had received a memorandum sent to all PBGC employees regarding the "Inappropriate use of PBGC Resources."  (Compl. ¶¶ 28-29.)  Although the definition of "adverse action" for retaliation claims is more expansive than for discrimination claims, a plaintiff must still be able to point to *some* action that a "reasonable employee would have found . . . materially adverse."  *Burlington*, 548 U.S. at 68.  Here, plaintiff does not allege that she was disciplined, threatened with discipline, or otherwise suffered objective harm as a result of being asked to sign a document acknowledging that she had *received* a prior memorandum.  Since plaintiff does not allege any adverse consequence, much less a "materially adverse" consequence that resulted from the request, no reasonable juror could find such a request would "deter a reasonable employee from making or supporting a charge of discrimination."  *Id.*; *see also id.* at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  Accordingly, defendant's motion to dismiss this claim will be granted.

## C.     Hostile Work Environment

Plaintiff claims she has made out a claim for hostile work environment based on race, sex, and retaliation[9] based on PBGC's failure to take appropriate corrective action in response to an environment where "employees felt free to disseminate inflammatory, defamatory, libelous, and intimidating emails and to make unfounded, harmful allegations about Plaintiff to others as

---

[9] Although hostile work environment claims based on retaliation are not as common as those based on race or gender, they are legally cognizable.  *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environment can amount to retaliation under Title VII.").

well as verbally assault, physically intimidate, harass and otherwise mistreat Plaintiff without fear of management intervention and censure."[10]  (Compl. ¶¶ 67, 76, 85.)

As explained above, plaintiff's hostile work environment claims based on EEO complaints 08-03, 09-02, 09-06, 06-09/07-01 (consolidated), FC-006-2010, and FC-010-2010 are dismissed for failure to exhaust or to bring a timely civil action.  Furthermore, to the extent plaintiff is alleging a hostile work environment based upon the underlying harassment that she claims PBGC failed to adequately investigate or take corrective action in response to, these claims must also be dismissed, as plaintiff does not allege that this underlying behavior (as opposed to defendant's response to this behavior) was due to plaintiff's race, sex, or activity protected under Title VII.  *Franklin*, 600 F. Supp. 2d at 76 ("Title VII only prohibit[s] workplace harassment based on a person's membership in a protected class or participation in protected activity."); *Na'Im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class.").

As a result, what remains is a claim of hostile work environment based on the following allegations—the PBGC failed to adequately investigate her complaints in April 2005 that she was the subject of a number of insulting emails attacking her as "psychotic"; failed to investigate her complaint in January 2007 that opposing counsel representing the agency in plaintiff's union grievance sent an email stating that plaintiff experienced "litigation induced hallucinations"; failed to take corrective action when Mr. Moreno yelled at her during a deposition; sought to

---

[10] Plaintiff does not attempt to segregate those events she claims constitute a hostile work environment from discrete acts of discrimination and/or retaliation.  Counts II, IV, and VI incorporate by reference all of the acts described in the complaint, lumping them all together for purposes of alleging a hostile work environment.

obtain her signature acknowledging that she had received a memorandum sent to all PBGC employees regarding the "Inappropriate use of PBGC Resources"; and failed to investigate her complaint that such a signature was requested from her. (Compl. ¶¶ 27-31, 33, 37, 55.) Plaintiff also claims that defendant took these steps based on its desire to retaliate against her for her prior and ongoing EEO activities, and that PBGC promptly responded to complaints by similarly situated white and male employees. (*Id.* ¶¶ 69, 77, 86.)

To establish a claim of a hostile work environment, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted)); *accord Pantazes v. Jackson*, 366 F. Supp. 2d 57, 71 (D.D.C. 2005) (quoting *Harris*). To determine whether a hostile work environment exists, courts should consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. Plaintiff cannot satisfy this test, because none of the acts that she alleges, whether considered alone or cumulatively, meets "the demanding standards" for a hostile work environment claim. *Sewell*, 532 F. Supp. 2d at 141-42.

Plaintiff misunderstands the nature of a hostile work environment claim. It is not a cause of action for the "ordinary tribulations of the workplace," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006). In fact, even when abusive behavior is "'motivated by discriminatory animus,'" it may not be actionable. *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (quoting *Barbour*, 181 F.3d at 1347).

The conduct complained of "must be *extreme* to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (emphasis added). This standard is designed to be "sufficiently demanding" so that anti-discrimination statutes do not become "'general civility code[s].'" *Id.* (quoting *Oncale*, 523 U.S. at 80). *See also Vickers v. Powell*, 493 F.3d 186, 198-201 (D.C. Cir. 2007) (noting that district court correctly concluded that hostile work environment was not created solely by three incidents that involved being "singled out for a requirement to provide inordinate amounts of medical information to support requests for leave," poor performance evaluations, supervisor's "angry threats," and derogatory comments about minorities).

In short, the acts that plaintiff complains about are simply not the type of "discriminatory intimidation, ridicule, and insult' that are 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

Moreover, plaintiff cannot rely on the discrete acts upon which she bases her discrimination and retaliation claims to support her hostile work environment claim. "Because plaintiff's allegedly 'hostile' events 'are the very employment actions [s]he claims are retaliatory[,] [s]he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.'" *Franklin*, 600 F. Supp. 2d at 76 (quoting *Keeley*, 391 F. Supp. 2d at 51); *accord Smith v. Jackson*, 539 F. Supp. 2d 116, 138 (D.D.C. 2008) ("[I]nsofar as Plaintiff attempts to base his hostile work environment claim on his [compressed work schedule] revocation and AWOL charge, he cannot simply regurgitate his disparate treatment claims in an effort to flesh out a hostile work environment claim."). "Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because '[d]iscrete acts constituting

discrimination or retaliation claims . . . are different in kind from a hostile work environment claim . . . .'" *Franklin*, 600 F. Supp. 2d at 77 (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)); *accord Wada v. Tomlinson*, 517 F. Supp. 2d 148, 211 (D.D.C. 2007), *aff'd*, 296 F. App'x 77 (D.C. Cir. 2008). "'[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.'" *Rattigan v. Gonzales*, 503 F. Supp. 2d at 82 (quoting *Parker v. State Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998)).

Although plaintiff has described a workplace that was "hardly ideal, no reasonable jury could find [that environment] 'abusive' . . . ." *Hussain*, 435 F.3d at 366 (citing *Harris*, 510 U.S. at 21-22). The Court will therefore grant defendant's motion to dismiss Counts II, IV, and VI.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Because the Court has found it unnecessary to convert defendant's motion to dismiss into a motion for summary judgment, plaintiff's motion for discovery pursuant to Rule 56(f) is denied as moot. A separate order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


Date:   October 13, 2010