## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**RHONDA N. BAIRD,** *pro se*           )
                                        )
**Plaintiff,**                          )
                                        )
**v.**                                  )
                                        )     **Civil Action No. 09-1091 (ESH)**
**JOSHUA GOTBAUM, Director,**           )
**Pension Benefit Guarantee Corporation,** )
                        **Defendant.**  )
_____ )

## MEMORANDUM OPINION

Plaintiff Rhonda Baird sued her employer, the Pension Benefit Guaranty Corporation

("PBGC" or "the Agency"), claiming discrimination on the basis of her race and sex, retaliation

for engaging in protected activity, and a retaliatory hostile work environment in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. On October 13, 2010, this Court

granted defendant's motion to dismiss all counts. On December 13, 2011, the Court of Appeals

affirmed in part and vacated in part that ruling and remanded a single claim—retaliatory hostile

work environment—for further consideration. Defendant has moved to dismiss this one

remaining claim and, for the reasons set forth below, its motion will be granted.

## BACKGROUND

### I.    FACTUAL AND PROCEDURAL HISTORY

The factual background of plaintiff's claims is detailed in this Court's Memorandum

Opinion, *Baird v. Snowbarger*, 744 F. Supp. 2d 279, 283-85 (D.D.C. 2010), and in the Circuit's

Opinion, *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011), so it need not be repeated

here in detail. However, an abbreviated discussion of the claims relevant to this motion will be

provided.

In its prior opinion, the Court held that claims based on five of plaintiff's EEO complaints— Nos. 08-03,[1] 09-02, 09-06,[2] and 06-09/07-01[3] (consolidated)—were time-barred and dismissed those claims.  It then addressed the four remaining claims— set forth in EEO complaints No. 05-12, No. 07-06, and No. FC-001-201—which had been properly exhausted and timely appealed and were based on four discrete episodes:

> (1) In a [spring 2005] dispute within the PBGC over the agency's scan of its email system, some fellow workers [including union official Dwayne Jeffers] circulated emails calling Baird "psychotic."

> (2) [In June 2005, t]he Human Resources Department ["HRD"] singled out Baird in securing her signature acknowledging receipt of an office memorandum relating to the use of office email.

> (3) [In January 2007,] PBGC litigation counsel Raymond Forster sent an email to several employees advising "the 11th floor OGC [Office of General Counsel] staff in the area of conference room 11E to use caution about what they say in halls or open offices,"

---

[1] "Plaintiff filed EEO complaint No. 08-03 on November 29, 2007, alleging discrimination, retaliation, and hostile work environment when, in her capacity as union president, she engaged in several union activities, prompting adverse responses by agency management." *Baird*, 744 F. Supp. at 285.

[2] On October 9, 2008, plaintiff filed EEO complaint No. 09-02, alleging race discrimination, reprisal, and a hostile work environment for "winning a liability decision finding unlawful retaliation by labor management staff of PBGC in 2005 & 2008 . . . filing EEO complaints and civil action against PBGC, and representing employees in EEO matters from 2002-2008." *Id*. at 284 (internal quotation marks omitted).  "Plaintiff filed EEO complaint No. 09-06 on similar grounds on February 23, 2009." *Id*.  In these complaints, plaintiff alleged, *inter alia*, that PBGC attorney Scott Schwartz "attacked her law license" and that she was assigned non-EEO work so that she would not have time to work on EEO matters. *Id*. (internal quotation marks omitted).

[3] On April 10, 2006, plaintiff filed EEO complaint No. 06-09, alleging discrimination and reprisal based on the following allegations: her medical and personal information was disseminated by union representative Dwayne Jeffers; the Agency failed to promptly respond to her complaints about this incident; and the Agency blocked her email messages to her union representatives (Jeffers and Robert Perry); and it sought to sanction her. *Id*.  "On October 16, 2006, plaintiff filed EEO complaint 07-01 alleging that PBGC's EEO office improperly recommended dismissal of her 2005 EEO complaint." *Id.*

> for "[c]ertain people who will be in 11E have a way of twisting
> and publicizing their litigation induced hallucinations."
>
> (4) [In August 2009, o]ne Ruben Moreno had shouted and pounded
> the table at Baird while she deposed him during a proceeding
> involving Equal Employment Opportunity complaints.

*Baird*, 662 F.3d at 1248 (some alternations in original).

Plaintiff also claimed that, in retaliation for her prior protected activity, the PBGC "fail[ed] to take appropriate correction action" in response to the complaints that she regularly brought about these incidents.   (Am. Compl. ¶ 68.)  This Court dismissed her discrimination and retaliation claims based on the discrete episodes because none of the acts, or the failure to remedy them, was sufficient to establish an adverse action.  *Baird,* 744 F. Supp. 2d at 291-94 . When considering Baird's retaliatory hostile work environment claim, this Court analyzed the Agency's multiple "failure[s] to take appropriate corrective action," *id.* at 289, in response to the four discrete episodes and found them insufficient because none of the acts alleged, "whether considered alone or cumulatively, meets 'the demanding standards' for a hostile work environment claim."  *Id.* at 295 (quoting *Sewell v. Chao*, 532 F. Supp. 2d 126, 141-42 (D.D.C. 2008)).  Plaintiff appealed on multiple grounds.

The Court of Appeals initially observed that Baird's claims were "relatively unusual in that she d[id] not assert that discriminatory intention brought about the underlying acts," but instead she claimed "that such discriminatory and retaliatory intent caused the PBGC's failure to respond to her complaints about them and to take corrective action against the employees who, as she sees it, had traduced or abused her."  *Id*. at 1249  It then went on to affirm the dismissal of plaintiff's claims of discrimination, agreeing that the four discrete episodes and the defendant's alleged failure to investigate and/or remediate them were workplace "slights,"  and "even if unlawfully motivated, . . . [they] would not rise to the level of adverse employment actions"

because "each of the four discrete episodes seems (at worst) akin to the sort of public humiliation or loss of reputation that we have consistently classified as falling below the requirements for an adverse employment action." *Id*. (internal quotation marks omitted).

It also affirmed the dismissal of Baird's retaliation claims based on the discrete episodes, as well as defendant's failure to investigate or to remediate, explaining that "[w]e do not believe that the PBGC's failure to remedy the various critiques and epithets to which Baird's fellow employees subjected her would have persuaded a reasonable employee to refrain from making or supporting charges of discrimination." *Id*. at 1250.

However, it vacated the dismissal of her retaliatory hostile work environment claim and remanded for two reasons. First, the Circuit concluded that it was error under *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 120-21 (2002), to categorically exclude allegations from time-barred EEO complaints, without evaluating whether they "exhibit[ed] the relationship necessary to be considered part of the same actionable hostile environment claim." *Id.* at 1251-52 (internal quotation marks omitted). Second, it was error to exclude the underlying acts that she claims PBGC failed to investigate or appropriately remediate from her retaliatory hostile work environment claim. *Id*. at 1252.

The Court must therefore first determine if the acts previously thought to be time-barred, are sufficiently "'*similar in nature, frequency, and severity* . . . [to] be considered part and parcel of the hostile work environment'" such that they should be included in plaintiff's claim. *Id*. at 1251 (quoting *Wilkie v. Dep't of Health & Human Servs*., 638 F.3d 944, 951 (8th Cir. 2011) (omission in original)). Second, it must determine whether that conduct, together with the acts alleged in the timely-filed claims, is sufficient to support a hostile work environment claim. *Id*.

## II.     PRESENT POSTURE

### A.     Timely Claims

As noted, plaintiff's timely claims are based on four discrete episodes which occurred over the course of four years.  Briefly, and taking plaintiff's allegations as true, these acts are as follows:

In spring 2005, Jeffers and Perry wrote insulting emails because they were angry that she told coworkers that they had prompted an agency-wide scan of employee emails.  (*Id.*  ¶¶ 23-26.) Baird filed several complaints about this with the HRD beginning in April 2005.  (*Id.* ¶ 27.)

Soon afterwards, in June 2005, the Agency sent out a memorandum to all PBGC employees regarding the "[i]nappropriate use of PBGC Resources."  (*Id.*  ¶ 28 (alteration in original).)  Plaintiff and two other employees were singled out by a subordinate of HRD official Richard Lattimer to sign an acknowledgement that they had received the memorandum.  (*Id.* ¶ 29.)  When she refused to sign it, an HRD employee arranged a meeting with her supervisor and alleged that she had put up inflammatory flyers in the office.  (*Id.*.)

In November 2005, the Agency hired a law firm (Littler Mendelson) to investigate complaints of inappropriate information in the office, including complaints made by Baird against Jeffers and Perry and complaints made by Jeffers and Perry against Baird.  (*Id.* ¶ 31.) The investigation concluded that there was no violation of the workplace rules because the emails sent by Perry and Jeffers related to protected union activity.  (*Id.* ¶ 33.)

Two years later, in January 2007, Forster (opposing counsel representing the agency in plaintiff's union grievance) sent an email to several coworkers stating that plaintiff experienced "litigation induced hallucinations."  (*Id.* ¶ 36.)

Two and a half years after that, in August 2009, Ruben Moreno, an HRD labor management official, yelled at plaintiff and pounded on the table during a deposition that plaintiff was taking in an EEO arbitration proceeding.  (*Id.* ¶ 55.)

Following each of these acts, plaintiff complained to the Agency and, each time, according to plaintiff, the Agency "failed to take appropriate corrective action" in response to her concerns.  (*Id.* ¶¶ 27, 30, 37, 55.)

**B.     Untimely Claims**

The Amended Complaint also asserts claims based on the following acts, which are time-barred except for their potential role in her retaliatory hostile environment claim *if* they meet the *Morgan* standard.[4]

After the law firm commenced its investigation of the inappropriate office emails, the Agency restricted Baird's emails to Jeffers and Perry in January 2006.  (*Id.* ¶ 32.)  Through her participation in the law firm's investigation, Baird found out that, at some point prior to November 2006, Jeffers had sent her arbitration file to his private EEO attorney in response to a subpoena.  (*Id.* ¶ 35.)  Her medical records, which were part of her arbitration file, were sent without her knowledge or consent.  (*Id.*)

While plaintiff was president of the union at PBGC, the Agency took an unfavorable position in union grievances and arbitrations.  (*Id.* ¶¶ 38-47.)  From June 2008 through August

---

[4] Although she does not seek damages for a November 2002 episode, Baird discusses it at length in her complaint and her opposition.  In that incident, one of her supervisors berated her and invaded her personal space "for some unknown and unspecified reason."  (*Id.* ¶ 9.)  In the arbitration proceedings that followed, the arbitrator found that the outburst was motivated by the supervisor's feeling that Baird had been rude at a meeting and that the PBGC did not adequately respond to her complaints about this incident.  (*See* Pl's Mot., Ex. 1 (arbitration decision).)  Plaintiff has explained that she does not seek damages for this incident (Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 27 n.6), nor did she include it in her appeal, but rather, she limited her claim of error to the four incidents that had been found to have been barred as unexhausted.  (Appellant's Br. at 44, *Baird*, No. 10-5421 (Sept. 16, 2011 D.C. Cir.) ("First in time and allegation in the Amended Complaint as a retaliatory action is PBGC's failure to respond or to timely investigate Ms. Baird's complaint of Messrs. Perry and Jeffers to PBGC for emails disseminated over PBGC's system that, *inter alia*, alleged she was 'psychotic' and associated with 'pornographers.'").)   Since she has already recovered for this 2002 incident, and it is not part of the Circuit's remand, this Court need not analyze it under *Morgan*.

2008, arbitration proceedings in which she was involved became contentious and Scott Schwartz, counsel for PBGC, suggested that another employee should overthrow Baird as Union president (*id.* ¶ 44), sought sanctions in litigation for alleged ethical violations, and told her supervisor of a comment that she made to the EEO judge.  (*Id.* ¶¶ 46, 54.)

In early 2009, Moreno told plaintiff's supervisor to increase her non-EEO work so that she would not have time to work on EEO matters (although he lacked authority to do this) and told a coworker that he had investigated Baird for misconduct, which was not true.  (*Id.* ¶¶ 51-53.) When Moreno incorrectly attributed an insulting comment to Baird in front of other employees during labor management negotiations in November 2008, he was escorted out of the room and scolded by other PBGC representatives.  (*Id.* ¶ 49.)  Plaintiff filed a complaint about this incident and, in response, Chief Management Officer Stephen Barber warned everyone who was present at the incident that they could be subject to discipline for their conduct in negotiations.  (*Id.*)

In September 2009, plaintiff's department director, Michael O'Connell, complained to the Agency that plaintiff had harassed him by email.  (*Id.* ¶ 56.)  When the Agency investigated his complaint against Baird, she was subject to an "unnecessarily lengthy" interview that lasted more than two hours.  (Pl.'s Mot. at 33; Am. Compl. ¶ 56.)  That same month, she was assigned to work with Gilbert Martinez (a subordinate of Lattimer) on a time-sensitive matter and he did not work quickly enough and otherwise "failed to advance work on an assignment they shared." (*Id.* ¶ 58.)  Both Baird and Martinez complained to their supervisors about their difficulties working with each other and the Agency responded by assigning additional staff to work with them.  (*Id.*)

Plaintiff complained to the Agency about all of these acts and alleges that it "failed to take appropriate corrective action" in response to her complaints.  (*Id*. ¶¶ 52, 55, 56, 58.)

## ANALYSIS

### I.     LEGAL STANDARD

To state a claim for retaliation under Title VII, a plaintiff must show that: 1) she engaged in protected activity; 2) she suffered an adverse action; and 3) a causal connection exists between the protected activity and the adverse action.  *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006).  The Supreme Court has emphasized that the employer's action must be "materially" adverse because the statute protects employees from "significant harms" and does not protect an employee from "trivial harms," *i.e.*, "those petty slights or minor annoyances that often take place at work and that all employees experience."  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).   Moreover, "a hostile work environment can amount to retaliation under Title VII."  *Baird*, 662 F.3d at 1250 (quoting Hussain v. Nicholson, 453 F.3d 359, 366 (D.C. Cir. 2006)).

Discrete acts of retaliation "'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'"  *Baird*, 662 F.3d at 1251 (quoting *Singletary v. Dist. of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (quoting *Morgan*, 536 U.S. at 113)).  But, as the Court of Appeals held in this case, a hostile work environment claim differs from a discrete act in that it

> is comprised of a series of separate acts that collectively constitute one unlawful employment practice, and accordingly, [under *Morgan*,] are subject to a different limitations rule.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Baird*, 662 F.3d at 1251 (internal citations, alterations, and quotation marks omitted).

As further noted by the Circuit:

> [t]he *Morgan* principle is not, however, an open sesame to recovery for time-barred violations.  Both incidents barred by the statute of limitations and ones not barred can qualify as "part of the same actionable hostile environment claim" *only if they are adequately linked into a coherent hostile environment claim*—if, for example, they "involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers." *Morgan*, 536 U.S. at 120-21.  *See also id.* at 118 (excluding any incident that "had no relation to the [other] acts . . . or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim"); *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011) ("[A]cts before and after the limitations period [that are] *so similar in nature, frequency, and severity* . . . must be considered to be part and parcel of the hostile work environment . . . ." (alterations and emphasis in original)); *Wheaton v. N. Oakland Med. Ctr.*, 130 Fed. App'x 773, 787 (6th Cir. 2005) (*Morgan* requires inquiry into whether incidents "occurring outside the statutory period are sufficiently related to those incidents occurring within the statutory period as to form one continuous hostile work environment."  (emphasis in original)). These formulations are at best only rather general, but neither the Supreme Court nor any circuit seems yet to have offered anything more illuminating.

*Id*. at 1251 (first emphasis added) (alterations and omission in original).

## II.    RETALIATORY HOSTILE WORK ENVIRONMENT

On remand, the Court directed the parties to brief the narrow issue of which, of the many acts described in the Amended Complaint, comprise Baird's retaliatory hostile work environment claim.  (Tr. at 17:21-22:4, *Baird v. Snowbarger*, No. 09-1091 (D.D.C. Apr. 12, 2012).)  Baird's post-remand brief, however, does little to segregate the acts that comprise her retaliatory hostile workplace claim.  Instead, she repeats the rambling narrative set forth in her Amended Complaint, which covers seven years of dissatisfaction with her employer, multiple intra-office disputes, EEO problems, and warfare within the union, as well as with management.[5]  According

---

[5] The contentious history of labor disputes at PBGC is set forth in the following rulings and opinions: *Anderson v. International Federation of Professional & Technical Engineers*, No. 10-

to Baird, *all* of the acts are related and comprise a single unlawful employment practice.  (Pl.'s

Opp'n at 26-27.)  Therefore, the Court must first determine which of the acts in the time-barred

EEO complaints it should include under *Morgan* even though they cannot, as a matter of law,

support independent claims for discrimination or retaliation.  *Baird*, 662 F.3d at 1250-51.

A.      **Which Time-Barred Claims Satisfy the *Morgan* Principle**

Under *Morgan*, acts that are otherwise time-barred "can qualify as 'part of a hostile work

environment claim' only if they are adequately linked into a coherent hostile environment

claim—if, for example, they 'involve[] the same type of employment actions, occur[] relatively

frequently, and [are] perpetrated by the same managers.'"  *Id.* at 1251 (quoting *Morgan*, 536

U.S. at 120-21) (alterations in original)).

Certain acts in Baird's otherwise time-barred claims are simply *not* related in any way to

her hostile work environment claim, since they are different in kind, sporadic, and perpetrated by

different PBGC employees with no meaningful connection.  The 2009 incidents involving

Martinez and O'Connell are distinct acts by different employees at different levels within the

PBGC hierarchy.  Their only connection with plaintiff's exhausted claims is that they show that

PBGC employees had a fractious relationship with the plaintiff.  *See Mason v. Geithner*, 811 F.

Supp. 2d 128, 179 (D.D.C. 2011).  Nor does the fact that Jeffers sent her arbitration file to his

EEO attorney in response to a subpoena, which resulted in disclosure of her medical records,

cohere with her hostile work environment claim.  There is no indication that the disclosure

affected plaintiff in the least—or that it was intended to—since he did so in response to a

---

0895 (D.D.C. filed May 28, 2010); *Baird v. Holway*, No. 10-0572 (D.D.C. filed April 9, 2010);
*Baird v. Holway*, 539 F. Supp. 2d 79 (D.D.C. 2008); and *Johnson v. Holway*, 439 F. Supp. 2d.
180 (D.D.C. 2006).

subpoena[6] and she only learned about afterwards.  *See Lester v. Natsios*, 290 F. Supp. 2d 11, 31-32 (D.D.C. 2003) (noting that, although the conduct was "insensitive, or even offensive," there was no evidence of discriminatory intent and it was therefore not indicative of a hostile work environment).  In addition, even though Jeffers is involved in one of her exhausted claims, the act of sending her arbitration file was not related, in terms of motivation, type, or effect, to any of the timely-filed claims.  *See Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005), *aff'd*, 505 F.3d 1296 (D.C. Cir. 2007) (acts are not related even if perpetrated by the same person).

Nonetheless, Baird attempts to weave together the various acts of different employees by asserting that they all result from PBGC ignoring her complaints, since that shows that the Agency condones and encourages retaliatory harassment.  (*See* Pl.'s Mot. at 2 ("Instead of addressing Plaintiff's workplace concerns, as they did for other employees, these officials initiated and perpetuated an insidious, opportunistic campaign to punish the Plaintiff for having the temerity to engage in Title VII activities.").)  However, her complaint lacks any factual allegations in support of this legal theory.  There is no basis upon which to infer that Martinez or O'Connell made complaints against plaintiff because of any failure to act by defendant.  Moreover, plaintiff's complaint explains the reasons that each had interpersonal conflicts with her (*see* Am. Compl.  ¶¶ 56, 58), which undermines her argument they were motivated by the Agency's failure to respond to her previous complaints about other people.  Therefore, these allegations remain time-barred.  *See Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007) ("[I]f [the sole timely act] had no relation to the acts [from the earlier period], or for some other

---

[6] Plaintiff alleges that this reason is invalid because the subpoena was directed to Jeffers personally and not as a labor official and, therefore, he should not have sent her arbitration file. (Am. Compl. ¶ 35.)  However, this does not change the fact that there is no basis to infer that this act was hostile or retaliatory.

reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover.") (quoting *Morgan*, 536 U.S. at 118) (second and third alterations in original).

Whether the allegations involving Moreno and Schwartz should come in under *Morgan* is a closer call given the timely claim based on Moreno yelling at Baird during a deposition while Schwartz stood by.  The people involved are the same, but the acts alleged are quite distinct. The time-barred allegation that Schwartz retaliatorily filed a sanctions motion against plaintiff, for example, is only really similar insofar as it, like Moreno's outburst during the deposition, stem from adversarial conduct in the course of litigation.  Nonetheless, the Court will treat these allegations about Moreno and Schwartz as at least plausibly related to one of Baird's timely claims and, therefore, they will be included in her retaliatory hostile workplace claim.[7]

Finally, plaintiff's claims that the Agency did not "take appropriate corrective action" in response to her complaints, either because it did not respond or because she disagreed with its method of remediation, survive under *Morgan* since her timely-filed claims set forth a similar pattern of conduct by the same agency.  Taken together, her timely and untimely claims describe a single unlawful, employment practice—that, in retaliation for plaintiff's protected activity, the PBGC has not adequately addressed her complaints.

In conclusion, having applied *Morgan* to plaintiff's otherwise time-barred claims, Baird's hostile workplace claim consists of the four original underlying incidents; Moreno's January 2009 comments to her coworker and her supervisor; Schwartz' conduct during the course of

---

[7] However, this point is ultimately moot because, as explained in Section II(B) *infra*, the allegations about Schwartz and Moreno's conduct during the course of litigation is not sufficiently related to the "one unlawful employment practice," *Morgan*, 536 U.S. at 118— the pattern of activity that comprises plaintiff's hostile workplace claim.

litigation in the summer of 2008; and the Agency's alleged failures to investigate or remediate the conduct of plaintiff's coworkers (from 2005-2009).

### B.   Whether these Claims Amount to a Hostile Work Environment Claim

Having decided what time-barred acts should be included under *Morgan*, the Court will now address the second issue on remand: whether the four discrete "underlying acts," when coupled with the above unexhausted incidents that have been found to comply with *Morgan* and the Agency's allegedly inadequate responses to Baird's complaints over a five-year period, "collectively meet the independent requirements of [a hostile workplace] claim (*i.e.*, be 'sufficiently severe or pervasive . . .,' *Harris*, 510 U.S. at 21), and . . . [are] adequately connected to each other (*i.e.*, 'all acts which constitute the claim are part of the same unlawful employment practice,' *Morgan*, 536 U.S. at 122), as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d at 1252 (omission in original).[8]  As explained more fully below, they do not, for some are not adequately connected for purposes of *Morgan* and, as to the remaining claims, they are not sufficiently severe or pervasive to meet the requirements of *Harris*.

---

[8] Rejecting a claim where the plaintiff had "compiled a list of discrete employment actions that she attempt[ed] to bring under the umbrella of a hostile work environment claim, the *Mason* Court explained

> Regardless of the possible strategic advantages that might flow from such an approach, it is well-established that this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim. The reason is simple: hostile work environments are by definition different because their very nature involves repeated conduct.

811 F. Supp. 2d at 177-78 (internal citations, quotation marks, and alteration marks committed).

1.      **Certain Acts are Not "Adequately Connected" under *Morgan***

As an initial matter, as is clear from the Circuit's Opinion, *see Baird*, 662 F.3d at 1252,

even as to the properly exhausted claims, plaintiff cannot simply lump together every unpleasant

encounter that occurred at the PGBC to create a retaliatory hostile workplace claim.  *See also*

*Mason*, 811 F. Supp. 2d at 178-79 (plaintiff failed to establish a hostile work environment claim

where alleged acts "are spread out over nearly five years; involve conduct ranging from a

physical altercation to what are at best minor inconveniences common to any workplace;

implicate a broad set of actors ranging from former coworkers to fourth-line supervisors");

*Patterson*, 391 F. Supp. 2d at 146 (finding that untimely acts committed by supervisor were not

related to claim of retaliatory reassignment by same supervisor); *Chaple v. Johnson*, 453 F.

Supp. 2d 63, 74-75 (D.D.C. 2006) ("[A] plaintiff must demonstrate that the alleged events

leading to the hostile work environment were connected . . . ."  and "establish a connected stream

of behavior that was severe enough to alter the conditions of his employment").

The allegation involving insulting emails sent by Jeffers cannot be part of her hostile

workplace claim because it is not related to the other conduct alleged in the complaint.  In

addition, although Baird incorporates all of the previous allegations in her hostile work

environment claim (Am. Compl. ¶ 68), and explicitly describes these emails as retaliatory, her

complaint reveals that Jeffers' reprisal was prompted by accusations that she had made about

Jeffers and Perry, not in retaliation for plaintiff's protected activity.  (*Id*. ¶ 26.)   More

specifically, she alleges that Jeffers and Perry became hostile to her and sent an inflammatory

email calling her psychotic "bec*ause of* she [sic] informed affected employees of the facts behind

PGBC's actions."  (*Id*.)  In other words, they retaliated against her because she told her

coworkers that Jeffers' and Perry's email to senior PGBC officials had prompted the Agency to

scan the entire email system.  In fact, Baird's brief on appeal confirms this, explaining that the

first retaliatory action for which she seeks damages was the Agency's failure to *address* her complaint about the emails—and not the emails themselves.  (*See supra* note 4.)

Relatedly, the Agency's subsequent restriction on her emails to Jeffers and Perry has nothing to do with the other allegations in her hostile workplace claim.  There is no reason to infer retaliation or even hostility toward the plaintiff, particularly as the factual allegations suggest that it was a corrective measure intended to stop the inflammatory emails involving her, Jeffers, and Perry.  (*Id*. ¶ 32.)[9]

Similarly, her attempt to sweep in adversarial conduct arising in the course of litigation is unavailing.  As the Supreme Court has explained, "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Burlington N. & Santa Fe Railway Co.*, 548 U.S. at 69.   It is especially significant here.  *See Steffes v. Stepan Co*., 144 F.3d 1070, 1075-76 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII].");  *Mamman v. Chao*, No. 06-2688, 2011 U.S. Dist. LEXIS 50903, at *18-21 (D.N.J. May 12, 2011)). Given that the context was an arbitration proceeding in a long-lasting and contentious labor dispute (*see supra* note 5), there is no indication that Moreno's angry outburst at a deposition, Schwartz' comments at the deposition, or his filing a sanctions motion were retaliation for protected activity.  This is particularly true since plaintiff had filed her own sanctions motion against the Agency.  (*See* Am. Compl.¶ 45.)  Perhaps recognizing the unseemly situation that would be created if the Title VII judge had to evaluate the conduct of litigators before a different judge, courts have wisely found

---

[9] In fact, this allegation does not even support her theory of the case.  Following the Jeffers/Perry email episode, the Agency in fact responded to complaints about insulting emails in the workplace and took corrective measures—it sent around an office-wide memorandum about inappropriate emails and hired the Littler Mendelson firm to investigate the matter.  However, plaintiff complains nonetheless because she disagrees with the *way* in which it remediated the problem.

it is "a matter to be resolved pursuant to court rules, not by Title VII." *McKenzie v. Ill. Dep't of Trans.*, 92 F.3d 473, 486 (7th Cir. 1996) (considering plaintiff's claim that employer retaliated against her by instructing other employees to obstruct her sex discrimination suit); *Mamman*, 2011 U.S. Dist. LEXIS 50903, at *18-21.  Moreover, such adversarial actions in the litigation context are very different from the other allegations that comprise the unlawful employment practices that underlie her hostile workplace claim.  *See Peters v. Dist. of Columbia*, No. 09-cv-2020, 2012 U.S. Dist. LEXIS, at *74-75, at *75-76 (D.D.C. Apr. 16, 2012) (dismissing retaliatory hostile workplace claims as insufficient when viewed in the context of the complaint.)

### 2.      Remaining Conduct is Not Severe or Pervasive under *Harris*

Given the above analysis, Baird's hostile workplace claim consists of the following acts: HRD singling out Baird to get her signature acknowledging receipt of an email-related office memorandum in June 2005; Forster's 2007 email about "litigation induced hallucinations;" and Moreno's January 2009 comments to Baird's coworker and supervisor, as well as her claim that the Agency has failed to appropriately address the workplace incidents that she has complained about dating back to 2005, from Jeffers' and Perry's emails through the incidents with Martinez and O'Connell in October 2009.

In assessing this claim, the Court applies the following legal standards.  First, plaintiff "must show that h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted)).  Courts are to consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201.

16

Moreover, "[i]t is not enough to merely show harassment, for Title VII does not prohibit all forms of workplace harassment, only those directed at [retaliation] because of [a person's protected activity]." *Ware v. Billington*, 344 F. Supp. 2d 63, 71 n.1 (D.D.C. 2004) (internal citation omitted).  For that reason, in order to make a claim for retaliatory harassment, "the plaintiff must establish a causal connection between the harassment and her protected activity to succeed on the claim." *Lewis v. Dist. of Columbia*, No. 07-0429, 2010 U.S. Dist. LEXIS 93299, at *38 (D.D.C. Sept. 8, 2010); *see also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 (D.D.C. 2005) ("[M]any bosses are harsh, unjust, and rude, it is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.") (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)), *aff'd*, *Nurriddin v. Griffin*, 222 Fed. Appx. 5 (D.C. Cir. 2007).

Apropos of these standards, it is noteworthy that the Court of Appeals described both the Forster email and the requirement that Baird acknowledge the receipt of the memorandum as workplace "slights," and affirmed this Court's ruling that such trivial occurrences were not actionable as independent acts of discrimination.  *Baird*, 662 F.3d at 1250.  Similarly, the Circuit held that this Court was correct to dismiss Baird's retaliation claims arising from the four underlying acts, holding that "PBGC's failure to remedy the various critiques and epithets to which Baird's fellow employees subjected her would [not] have persuaded a reasonable employee to refrain from making or supporting charges of discrimination." *Id.*

But, the linchpin of plaintiff's hostile workplace claim is her contention that, in retaliation for protected activity, the Agency did not adequately address her complaints.  As the Court of Appeals noted, this is a novel theory that relies heavily upon *Rochon v. Gonzales*, 438

F.3d 1211 (D.C. Cir. 2006). *Baird*, 662 F.3d at 1249. In *Rochon*, the plaintiff (an FBI agent) alleged that the FBI had failed to investigate or take any steps to protect him from credible death threats by a prison inmate. *Rochon*, 438 F.3d at 1213-14. "There was no suggestion that the FBI was responsible for the threatening inmate's behavior, but (focusing on the retaliation) [the Circuit] found that allegations of an unlawfully motivated failure to investigate the threat or to protect the Rochons were sufficient to survive a motion under Rule 12(b)(6)." *Baird*, 662 F.3d at 1249. In *Baird*, the Circuit explained *Rochon*'s application to a Title VII suit: "[s]tated in a form most favorable to plaintiff, a claim of discriminatory or retaliatory failure to remediate may be sufficient if the uncorrected action would (if it were discriminatory or retaliatory) be of enough significance to qualify as an adverse action (under the relevant standard)." *Id*.

     Applying *Rochon* demonstrates that this case differs factually in two important ways.

     First, the unremediated conduct here is far less significant; the slights that Baird complains about are hardly akin to a death threat. *See Clemmer v. Office of the Chief Judge of Circuit Court*, No. 06 C 3361, 2008 U.S. Dist. LEXIS 109595, at *50-51 (N.D. Ill. Dec. 2, 2008) (distinguishing *Rochon* because allegedly uninvestigated harassment was far less egregious). Even assuming that the conduct alleged was retaliatory and related, it still only amounts to a collection of minor incidents over a five-year period.[10] *See also Baird*, 662 F.3d at 1248-50.

_____

[10] *See Baloch*, 550 F.3d at 1201 (holding that employee's four verbal altercations with supervisor, two impositions of leave restrictions, two proposals of suspension, and other clashes over two-year period were too sporadic); *Alfano*, 294 F.3d at 374 ("As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"); *see also Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (no jury could find that "abusive" condition existed where plaintiff alleged numerous acts of retaliation including heightened monitoring by supervisors, poor performance evaluations, delay in forwarding retirement application forms, denial of counsel during a discussion about retirement, denial of access to his personnel file, termination threats, and failure to address insubordination by other employees); *Taylor v. Chao*, 516 F. Supp. 2d 128, 136-37 (D.D.C. 2007) (no hostile work environment where coworkers asked if the plaintiff's hair w[as] "red all

Unlike complaints that exhibit the requisite retaliatory hostility in workplace conditions,[11]

Baird's allegations consist of a series of "petty slights," ordinary workplace tribulations, and

litigation-related disputes that do not establish a hostile work environment claim.  *Taylor*, 571

F.3d at 1323; *see also Baird*, 662 F.3d at 1248-50.[12]  Moreover, given the less than compelling

---

over," called her "sweetie" and "baby," and said that he could "beat up her fiancé"), *aff'd sub nom*, *Taylor v. Solis*, 571 F.3d 1313, 1323 (D.C. Cir. 2009); *George v. Leavitt*, 407 F.3d 405, 407-09 (D.C. Cir. 2005); *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 64 (D.D.C. 2003) (no hostile work environment where coworker referred to plaintiff as "nigger" and another coworker said "black women were at the bottom. The white men were first, the white women were right up there with them . . . .").

[11] *See, e.g.*, *Leftwich v. Gallaudet Univ.*, No. 11-cv-798, 2012 U.S. Dist. LEXIS 100034, at *43-44 (D.D.C. July 18, 2012) (finding complaint sufficient where plaintiff alleged that discriminatory acts, including direct insults and criticism for not performing tasks exceeding his (disabled) physical capacity,  which occurred nearly every day for three years); *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 9-10 (D.D.C. 2011) (finding that complaint adequately pleaded a hostile work environment claim by asserting that the discriminatory conduct occurred nearly every day for over four years); *Winston v. Clough*, 712 F. Supp. 2d 1, 12-13 (D.D.C. 2010) (denying motion to dismiss where alleged acts included "allegations that he threatened violence against a coworker, to being evicted from his workspace and barred from meetings, to being stripped of supervisory duties and banished to cramped work space, to facing a proposed suspension that was later  overruled"); *Holmes-Martin v. Leavitt,* 569 F. Supp. 2d 184, 188 (D.D.C. 2008) (denying motion to dismiss where plaintiff "allege[d] that [a coworker], among other things, relied solely on e-mail contact; did not provide her with work to do seventy-five to eighty percent of the day; isolated her from the Small Business Association ("SBA") procurement center representative; changed the locks on her office; and manipulated her performance evaluations" and reassigned her duties to others).

[12] Examples of cases in which courts have granted motions to dismiss hostile workplace claims under *Harris* include: *Casey v. Mabus*, No. 11-cv-0441, 2012 U.S. Dist. LEXIS 100765, at *30-31 (D.D.C. July 20, 2012) (finding complaint insufficient where plaintiff alleged that her supervisor spoke in a loud and aggressive manner, "slammed his hands on the desk," gave a demeaning response to her, and said that "if he were to put any statements in writing, those statements would include an evaluation that would lead to a demotion," and she was excluded from training courses); *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (dismissing claim where plaintiff alleged that he was yelled at, received unfavorable feedback, told he could not submit any  more assignments, and placed in probationary status to improve job performance); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103-04 (D.D.C. 2010) (dismissing complaint where plaintiff alleged multiple disciplinary actions for things for which he was not responsible, that he was placed on administrative leave due to a false accusation of misconduct, false allegations that he had been rude, receipt of a pre-termination hearing letter that was not normally given in similar circumstances, incorrect assumptions that he

nature of the underlying acts, it is hardly reasonable to penalize the Agency for not doing more to prevent or investigate these acts.

Second, whereas Rochon's employer "had not taken *any* measures to respond to the[] death threats" he received, *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 26 (D.D.C. 2004) (emphasis added), Baird's employer *did* take steps to address some of plaintiff's complaints.  Consequently, her "failure to take appropriate corrective action" claims are, in many cases, simply challenges to the *way* in which the agency remediated.  For example, in response to her complaints about inappropriate emails from Jeffers and Perry, the Agency sent out a memorandum setting out guidance on inappropriate emails and hired an independent law firm to investigate the dissemination of inappropriate information in the workplace (including Perry's and Jeffers' complaints about emails from Baird).  (*Id.* ¶ 31.)  Even so, plaintiff alleges retaliation because she felt that she should not have been asked to sign an acknowledgement that she had received the memorandum and claims that the Agency "fail[ed] to take appropriate corrective action" because she was dissatisfied with the result of the investigation.  (*Id.* ¶¶ 28, 33-34, 66-70.)  The Agency also responded to an inappropriate comment by Moreno during labor management negotiations.  (*Id.* ¶ 49.)  Immediately after hearing Moreno's comment, the PBGC representatives who were present scolded Moreno and, when Baird subsequently complained about this incident, PBGC's Chief Management Officer warned everyone who had been present that they could be subject to disciplinary action for conduct in labor negotiations.  (*Id.*)  Baird nonetheless contends that the Agency's response was improper because the warning was given to

_____

was the subject of a complaint, and criticism of his foreign accent in front of coworkers); *Pearsall v. Holder*, 610 F. Supp. 2d 87, 99 (D.D.C. 2009) (dismissing claim where plaintiff "argu[ed] that DOJ created a hostile work environment by (1) assigning him substandard office space; (2) denying him training; (3) denying him the opportunity to telecommute on a temporary basis for medical reasons; (4) excluding him from certain meetings; and (5) generally underutilizing his skills and experience").

everyone present (including her) rather than only to Moreno.  At the same time that she impugns the Agency for insufficiently remediating her complaints, she also challenges instances where the PBGC's effort to ameliorate the internal discord included her.

Ultimately, many of her grievances are simply differences of opinion about how the Agency should address interoffice disputes.  While her frustration is understandable, the Circuit has admonished that a "district judge does not sit as 'super-personnel department that reexamines an entity's business decisions.'"  *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)).  Accordingly, this Court will not permit criticisms of the Agency's responses to workplace strife to be recharacterized as a retaliatory hostile work environment.  *See Clemmer*, 2008 U.S. Dist. LEXIS 109595, at *51 ("[The plaintiff] may have preferred her employer to do more in its investigation, but its failure to conduct an inquiry to her satisfaction does not constitute an adverse action."); *see also Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 101 (D.D.C. 2011) (complaints were, at base, about supervisor's management style, and "such assertions cannot support a hostile work environment claim"); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 206 (D.D.C. 2011) (finding that "the majority of plaintiff's complaints relate to her immediate supervisor's management style," and "[b]eyond alleging less-than-ideal working conditions, plaintiff has not made sufficient allegations that defendant severely or pervasively altered and interfered with her employment"); *Johnson v. Bolden*, 699 F. Supp. 2d 295, 302 (D.D.C. 2010) ("[N]early all of plaintiff's allegations of a hostile work environment, even if taken as true, amount to nothing more than plaintiff's objections to the management style of [supervisors in] his chain of command.").

Finally, it is worth noting that Count II is premised on an unprovable proposition, *i.e.*, if the Agency had taken different corrective action in response to her complaints and done more to

enforce the Agency's rules, the offensive behavior she encountered would not have occurred.

First, as this Court noted in its prior opinion, plaintiff cannot claim under Title VII that defendant

is

> obligated to respond to complaints and take corrective action
> where warranted to ensure plaintiff has a "*positive and productive
> work environment*." (Pl.'s Opp. at 21 (citing PBGC "workplace
> rules") (emphasis added); *see id.* at 22 ("Defendant has repeatedly
> failed to apply its workplace rules to protect the Plaintiff in the
> workplace, violating its own policy . . . .").)  Contrary to plaintiff's
> belief, Title VII is not "'a general civility code for the American
> workplace.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.
> 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services,
> Inc.*, 523 U.S. 75, 80 (1998)).

*Baird*, 744 F. Supp. 2d at 289-90 (omission in original).  Second, much of the rancor at the

PBGC reflected a work environment rife with litigation, long-running arbitrations, and bitter

labor battles among union members and with management.  (*See supra* note 5.)  While we can

hope that all employers succeed in promoting a harmonious environment, the failure to do so

should not mean that the employer is liable under Title VII for a retaliatory hostile work

environment.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss.  A separate

order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   August 28, 2012